Good morning, Your Honors. Your Honor, may I reserve three minutes for rebuttal? You may. Our first case for the day is Kendig v. Stolar, No. 24-2260. Thank you, Your Honor. May it please the Court, my name is Joel Sansone. I represent the appellant, the plaintiff in this matter, Corey Kendig. Probable cause. Probable cause. That is what this case is about. What is the plain, simple meaning of the word probable in the Fourth Amendment's prescription against arrest without probable cause? In this case, I think the law is very clear. A police officer must believe that a person committed a crime before they can charge that person with a crime. In this case, the defendant has admitted that the plaintiff had a very good case, a very good case of self-defense. He and his partner both said, we don't want to see this guy go down for defending himself. Don't we first of all have to agree that the Officer Stolar is not entitled to qualified immunity? No, sir, and I'll tell you why. All of the cases say you must believe he committed a crime. This defendant admitted that he concluded after his investigation, but before filing the charges, that he thought the plaintiff had a very, very good case of self-defense. He could not, on the other hand, then take the position that the plaintiff committed a crime, that he believed that the plaintiff committed a crime. And that is black-letter law. I just want to ask you about a fact you just said. I thought the statement that Kendick had a good case of self-defense was a week after the affidavit for probable cause was filed. And I got that at appendix 267 through 68. Well, certainly the issue of whether or not the affidavit for probable cause was deficient is part of the case. But I think the threshold question is, did he have any probable cause to charge in the first place? If he thought that the plaintiff probably had a very good case of self-defense and he was just defending himself, that he did not act recklessly, that he did not act negligently, he could not turn around and say, but I believe he committed a crime. And because he knew that he must take the position that he believed that the person committed a crime, and if he couldn't do that, he didn't have probable cause and couldn't arrest. Who filed the indictment, the prosecuting attorney or the store? The arresting. I'm sorry, I didn't know that. Who filed the indictment here? The prosecuting attorney. So doesn't that person really, isn't that person the last bulwark you have to make the decision whether to go to trial or not? And the officer is just doing his job. Obviously, there are a lot of facts that were proven at trial that he did have a good case of self-defense. But what's the what's a trooper or officer to do? Well, first of all, we don't know what happened at the preliminary hearing. We know there was fighting probable cause. But Merkel and the other cases say in the 1983 case, the opinion of the of the magistrate does not establish probable cause. And we don't even know why the magistrate made that decision. And it certainly wasn't a decision that was made at the time of the charging charging decision. So the officer can't rely on that. And certainly we don't want to rely on the prosecutor to be the last word on whether or not there's probable cause. It's the police officer's initial duty to determine whether there was probable cause in this case. And he said, I don't think the guy committed a crime. But in the real world, not a lot of police officers just. I don't want to say kick the can down the road, but basically do their job, do the arrest. It goes to another level for a person to make a decision whether to go for a preliminary hearing and ultimately to indict and let the process play out. You make a big part of you. Go ahead. You make the perfect argument for me. He kicked the can down the road. He said, but isn't that the typical thing that's done in the real world? Because it's typical doesn't mean it's the right thing to do. It's the job of the police officer in the first instance to determine if there's probable cause here. And it's so much more important in this case than virtually any other case, because when you have a homicide charge, like in this case, you face no bail. You face the possibility of not getting out of jail. This police officer can't kick the can down the road. You need to tell him due respect. I think this court needs to tell the police officer you must make that determination in the first instance. And when you determine that he probably didn't commit the crime, you can't charge him with that. So qualified immunity. I beg your pardon. What about qualified immunity? He gets qualified immunity if it's not clear what the law is. The law is very clear. You're all that clear. I mean, you look at you look at the cases that go both ways. I don't disagree. But here's the difference in this case. It's not clear from the current state of the law, and perhaps it should be, but it isn't clear whether an officer must consider all affirmative defenses. However, in this case, we know that he did. We know that he concluded at the time he undertook the analysis of self-defense, he concluded in a very good case of self-defense. So whether or not he had to, he did. And this court cannot ignore the fact that the charging officer did not believe this guy committed a crime. And that's why qualified immunity doesn't apply, because he knows he has to make that determination. He has to say he probably committed a crime before he can charge him a crime. So qualified immunity might apply if he never even discussed the issue of self-defense. But here he considered self-defense. He looked at all of the facts. My colleague wants to paint this case as a nuanced case. This officer didn't find it to be nuanced. There was no credible evidence to suggest that my client had anything to do with this case, except he was the victim of a murderous attack. What rule do you suggest that we adopt with respect to, let's go back to probable cause? When the facts are so clear that an affirmative defense applies, and when the officer arrives at that conclusion before charging, the officer must not charge. What's the authority for that position? Well, every case, starting with Raddick, all the way in 1989, all the way through Wagner, all say in black-letter law, the officer must believe the person committed a crime. This officer did not believe that. He made it very clear. What he said was, yeah, I think you've got a very good case of self-defense. I don't want to see him go down for defending himself, but I'm going to let the jury decide that. And what you're talking about is a statement a week after the affidavit of probable cause, right? Ma'am? What you're talking about is a statement that the officer makes about a week or so, or the determination the officer makes about a week or so after the affidavit of probable cause. He testified in his deposition that he made that determination before charging. Now, the fact that he left out of the affidavit of probable cause information, which I'm quite sure any judge would want to know. For example, there's an unbiased third-party witness who exonerates the plaintiff completely. There is a member of the riotous gang who exonerates the plaintiff. There is a video with 22 different observations about what occurred in this case that supports both witnesses and what they said happened here and what the plaintiff said happened. Is that the same video that was submitted to us? Ma'am? Is that the same video that was submitted to us? Yes, ma'am, and if you look at what happened in the record, the defendant himself made 10 different references to what he saw in that video. The other officer made 8 different references to what he saw. You're talking about the officer's references to what they saw in the video? Yes, ma'am. I understand. So they clearly said, and they said, this is what we see, Mr. West. Your statements don't line up with the video. Now, the trial judge says that video had no value, except that she did say it might corroborate what the witnesses say. Well, how is that no value? And how is that giving us the benefit of the doubt? She said, I'm not taking away the inference that the plaintiff gets. Yes, she did. That's exactly what she did. Let me ask you a question. Today, I just want to make sure, do you concede that the officer had probable cause to defeat the false arrest and false imprisonment claim? No, ma'am. No, ma'am. By the time the case went to trial, he already knew all of these facts. He'd actually gone to the eyewitness, the unbiased eyewitness, weeks down the road to see what she had to say, and she gave him even more reason to withdraw these charges. So there's a line of page 33 of your brief that says, Plaintiff does not insist that no criminal investigation should have resulted from this incident. Because the trial judge said that she doesn't want to live in a world where there's no investigation of something like this. There was a complete investigation, which resulted in the charging officer concluding that the guy didn't commit a crime, and yet he charged him anyway. That's where this case goes off the rails. And, you know, the lower court's opinion that this case was a case where justice was served, where my client ought to be grateful, well, why should my client be grateful? Listen, this is a serious case as it impacts the Second Amendment rights of any American. I don't know that anybody would have expected me to be up defending the Second Amendment, and, by the way, I have on a number of occasions. But in this case, if we have the right to keep and bear arms, and to bear those arms, I think everybody would agree for the purpose of defending your life. How does this decision by the lower court impact on the ability to use a weapon to defend your life? My colleague has tried to paint this as a situation where my client wasn't that injured. They ripped his ear off. He'd have it sewn back on. He had a concussion. He has back injuries to this day that came from this incident. He was in serious fear of his life. And, by the way, they claim this was a one-on-one fight. It was no such thing. But the evidence taken in any light, particularly in the light most favorable to Plaintiff, was Plaintiff wasn't doing anything. He was having a calm conversation with some guy, and another guy comes up and cold-cocked him. And from there, he is defending his life. He retreated twice when the Castle Doctrine, which applies to the truck he was trying to get into, doesn't require him to retreat at all. He tried twice to retreat. He didn't pull his weapon the first time he got hit. He didn't pull his weapon the second time he got hit. If one of the witnesses is to be believed, he may have thrown some punches at the very end of this. That doesn't make this a one-on-one fight. Those punches were thrown at the end of the incident when one guy was choking him out and one or two guys were punching the guy and hitting him. He had no reason to believe he was going to get out of this alive. And when he took his gun out, he said, I fired it to defend myself. He didn't intend to kill anybody. He didn't even know if he hit anybody. It's all he had left to try before he was killed. Just to make sure I understand your position, you can see that the case law is not clear, that an officer has an obligation to consider and determine, A, an affirmative defense. But your position is where the officer does it and determines that there is, they cannot charge. And where the officer concludes that this guy didn't commit a crime, he doesn't have probable cause. That's black-letter law, and that should not result in a false accusation. He didn't make that conclusive determination. Sir? He did. I mean, he, in effect, found that there was probable cause. And if you look at decisions of our court, I mean, as recently as this year, where it says this court has not held that an affirmative defense is a relevant consideration in the probable cause analysis. No, but it is very clear that if he concludes that the guy didn't commit a crime, that has long been established that he cannot, there's no probable cause. Where is it in the record that he determined that Mr. Kendig did not commit a crime? In his deposition, he said, I concluded that he had a very good case of self-defense, which means And self-defense for purposes of qualified immunity is not taken into account. So we know that what's on his mind is, this guy probably didn't commit a crime. That's what he's saying. He can't turn around and say he probably did. But the point is, is there any clearly established law in the Third Circuit that an officer is supposed to take into account an affirmative defense? No. But it is clear in this case that he did so. And when he does so, and when he concludes that the guy probably didn't commit a crime, based on his own analysis, he can't charge. Thank you, counsel. We'll hear you on rebuttal. Thank you, Your Honor. Good morning, Your Honor. Good morning. May I please have the court? My name is Michael Scorinci. I'm a senior deputy attorney general with the Pennsylvania Office of Attorney General. I'm here representing Pennsylvania State Trooper Nicholas Stolar on this appeal. Qualified immunity exists to protect state actors, including police officers, from civil liability for reasonable mistakes, whether those mistakes are of fact or of law or mixed questions of fact and law. What is the relationship between Trooper Stolar and the District Attorney's Office? Trooper Stolar consulted with – it's reflected in the record – Trooper Stolar consulted with an assistant district attorney before deciding to charge in this case. Under this court's precedent, Kelly v. Borough of Carlisle, when an officer consults with an ADA before charging, he's entitled to a presumption of qualified immunity, which the plaintiff has to rebut by showing it was unreasonable for the trooper to rely on that advice. Now, we believe that Mr. Kendig has not rebutted that presumption. And in fact, the clearly established law here, Your Honor, is exactly to the contrary of what Mr. Kendig has proposed. I think he even admitted that during his argument. The clearly established law from this court is that an officer does not have to consider an affirmative defense when making a probable cause determination. You've said that over and over again. But does the officer have to consider all the elements of the crime and is not intent an element of the crime? Your Honor, I don't – he does – to answer your question, yes. He has to consider the elements of the crime as part of a probable cause analysis. Trooper Stolar did that. This was charged as third-degree homicide here, a criminal homicide. So that involves, whether that's reckless or negligent homicide, I think certainly there's probable cause to believe that his conduct satisfied reckless mens rea. I don't think there's any dispute that he shot and killed Mr. Jeremy Jones, and that satisfies probable cause. The question in this case is whether he should have considered self-defense before charging. But it's not an element of his intent. No, it's not an element of intent. No, under Pennsylvania law, and I cited this in my brief, self-defense is an affirmative defense. It is not an element of the crime. But intent is an element of the crime. Yes. I mean, don't you get into an intermeshing area here between what is an affirmative defense and what is intent? And if you can say that intent to kill or intent to defend oneself, these are all elements of the crime, should they not be considered. Whether you call them affirmative defenses or not, they're still elements of the base of crime. Respectfully, Your Honor, I disagree. Pennsylvania law has said that it's an affirmative defense and that it's not part of the elements. So just to be clear, is it your position that it wouldn't matter how clear the defense is? Let's say we have a situation where there is a video that very, very, very clearly shows what's going on. There is no statement to the contrary. All of that's known at the time that the affidavit is submitted. Would it be your position that there's no obligation whatsoever to consider that? No. I think what you should do in this case is if you're going to develop the law, I think you should do what you did in Holman v. City of York State. It has to be a clear-cut matter. In Holman, there was countless factual permutations. I think you have that situation here where you have the conflict in eyewitness testimony. So why is this a clear-cut case? Because you have several witnesses who said that this was a one-on-one fight when Mr. Kendig shot and killed Jeremy Jones. Who was it several? I know Mr. West said that Mr. Kendig started the fight. Everyone else, every other testimony went the other way. So what is it that creates the conflict here? Sure. Patrick Cacchione at page 362 said it was a one-on-one fight. Joshua Chatt, he said it was punches being thrown between two men. That's at page 401. Even if you look at Linda Lynch's first statement, she says that they were all trying to stop him and break up the fight when the shot went off, and that was at 71 and 72. So I think there's a reasonable view of the evidence. The Lynch's statements were inconsistent in the end, were they not? I think there was some inconsistency. In effect, that's what happened at the trial. He was found not guilty. I think there was some inconsistencies in her statements, and that's for a jury to decide on using the greatest test that we have for truthfulness, which is cross-examination. It's not for an officer. Had they seen the video? I think we've conceded that, at least for summary judgment, he looked at the video. The video is not clear. You had several witnesses say the same thing when they were looking at the video themselves. Well, wait a minute. Why shouldn't we take the way the officers described the video to Mr. West? I watched the video, too. I know what you're talking about. But why shouldn't we take, for purposes of this, the way that the officers described the video to West? Your Honor, I addressed this in my brief at a footnote, and I think the officer said this, and this is what Trooper Stolar said at his deposition, is that the officers were taking statements from other witnesses and using those statements as if they were on the video, and then relating those statements to other witnesses, saying this was on the video. So it wasn't that it was clear to them. They were just taking statements from other people and pretending that it was on the video for purposes of testing the truthfulness of the witnesses. Judge Montgomery, if I wanted to just say one more thing about the question you asked earlier, I thought of a hypothetical where it would be very clear, and I think that would be a situation, yes, where the officers should consider probable cause. I could think of, say, an armed robber comes into a bank, and he's threatening to shoot everyone if he's not given money, and a security guard shoots and kills him, and it's very clear on the video. I think in that situation, a very rare situation, as Judge Smith said in his concurring opinion in Mazuka, in that situation, yes, it's clear-cut, and the officer considered it. But I think also in that case, you're not going to see the prosecutor recommending that that case be prosecuted. So I think the law is very clear here. The clearly established law is actually- Initially, the charge was, among other things, homicide, and then it was later amended to what, criminal homicide? Yes, criminal homicide, yes. So what was the thinking behind the reduction in that charge? I'm not sure, Your Honor. There was also some lesser-included, like voluntary, involuntary manslaughter. So for voluntary manslaughter, it would be if his claim of self-defense was imperfect, meaning that his belief that he was facing imminent danger of death or serious physical injury, if that was an unreasonable belief, then it would have been a lesser homicide. And I think that's how Trooper Stolar viewed the case. Yes, he acknowledged it was a very good case of self-defense, but he said in his deposition that this is something that has to go to a jury. There are a number of credibility determinations to be made, and that's for a jury to make, not for an officer, just as we don't want an officer determining a suspect's guilt. We also don't want him determining his innocence. This is for a jury to decide. I know I mentioned the... Do you agree that the witness testimony, certain of the witness testimony and the video evidence, should have been included in the affidavit of probable cause? No, under the clearly established law, no. If you look at Wagner v. Northbrook's Regional Police Department, although that's a case about compulsory joinder and double jeopardy as affirmative defenses, you said in that case that an officer does not have to disclose facts about an affirmative defense in an affidavit of probable cause. And I think the reason for that is, one, is that affirmative defenses are something that a defendant has to raise before a court of competent jurisdiction and then for the court to rule on it. And I think, again, affirmative defenses often involve daunting legal issues that turn on the credibility of witnesses, and so that's not appropriate for a judge to consider when... Not appropriate for a judge to determine as part of a warrant application. It's your position that it's not relevant to whether or not he committed the charge of offense, or committed the offense. Right. What if it's relevant as to intent? I think in most cases, Your Honor, that's not going to be clear-cut. I think it has to be clear-cut. Again, in this case it was not clear-cut whether this fight was breaking up when he shot. I think that's what the officer saw. Even Linda Lynch, again, she said there were two or three people attacking him, but there were other people pulling these assailants off. So he may have fired too soon under a reasonable view of the evidence. And again, Pennsylvania, under Pennsylvania law, Pennsylvania law holds life sacred in that the use of deadly force should only be as a matter of last resort. And there's a question here as to whether it was a matter of last resort. And that was for a jury to decide. The jury seemed to find pretty clearly it was, he was in a case of last resort. That's right, Your Honor. But, again, that's a very different standard than probable cause, which is a low bar. And we don't have here, I don't know exactly what the witnesses testify, if there was a change in testimony. Or maybe Linda Lynch, they found her much more credible despite her, the contradictions in some of her statements. But, again, that's not for Trup Estolar to make a determination. What do you believe is the definition that should be applied here for probable cause? I think the definition, of course, it has to be defined very specificity. I think you have to take into all the facts and circumstances and then say whether an officer has to consider an affirmative defense before. What would you say is just a good definition of probable cause? Like a reasonable belief that a crime has been committed or something like that? That's what's consistent with the United States Supreme Court precedent. I think in Rataco, Judge Nora Fisher gave a good definition of the right at issue. If you just bear with me for one second, I have it. She defined it at page 11 of her opinion. Whether the right to be free from detention and prosecution based on an officer's omission of facts to a judge assessing probable cause, whether those facts give rise to a possible affirmative defense of self-defense. And, again, the clearly established law from this court is to the contrary to what Mr. Kending is proposing. The law is that an officer does not have to consider affirmative self-defense. I feel like I'm repeating myself maybe, Your Honor, and I'm happy to answer any further questions if you have them. Otherwise, I think you understand my argument. All right. Thank you, Counsel. Thank you. Your Honors, may I begin by debunking the notion that this was a one-on-one fighter, that any witness said so. First of all, the unbiased eyewitness said the guy was cold-cocked. He wasn't even looking. He got hit without being, you know. No, I think what your opposing counsel said is there were conflicting statements. No. There were two statements by Cachon and Chad that said that at the end of this fight, while my client was being choked and beaten, he may have swung a few times. That doesn't make this a one-on-one fight. First of all, there were two or three men, according to the eyewitness, attacking him at that time. There may have been people saying stop, but nobody was stopping. The only witnesses that say that my client ever threw a punch didn't happen until the end of the incident. He could have opened fire the first time he was hit. He could have opened fire when they bashed his head against the door. He didn't pull his gun. He maybe even started to try to fight back. That doesn't make this a one-on-one conflict. That's not what this was. But when you look at the cases, you've got, we mentioned one we talked about earlier, the Mazuka case, where Judge Smith, even concurring, says, quote, while I express no view on the issue, I question whether even if an affirmative defense is a proper consideration for an officer making the probable cause determination, this is clearly established for purposes of overcoming qualified objection. I said this. That wasn't clearly established. But what was was once he did his considerations, once he made his investigation and concluded that my client probably didn't commit the crime, he couldn't say that he probably did. What was your client's intent? That's the right question, Judge, respectfully. He was charged with third-degree murder. That requires a showing that he killed with malice. There's no evidence of malice. The police officer said he didn't act negligently, he didn't act recklessly, which are specific to the charge of homicide. There's no evidence of any ill will on his part, any wanton conduct, any recklessness. Those are the elements of third-degree murder, which is what he was charged with. He was also charged with voluntary manslaughter, which requires a sudden, intense passion. My client didn't have any passion. He didn't know any of these people. He was just walking to his car. There was no way to prove voluntary manslaughter. And involuntary manslaughter requires recklessness. And this defendant said he wasn't reckless. They didn't make any of the elements of the crime. That was why the jury came back in under an hour, in a homicide case. So they didn't make the elements of this crime. There was no evidence of any intent on his part. He didn't know any of these people. He was just walking to his car, his truck. I wanted to say also that the officer claimed that he was using a tactic with the witness and lied to the witness about what was in the video. First of all, everything that officer said is corroborated by the statement of the eyewitness. And also, he corroborated by the other people that looked at that video. So him saying after he gets sued, oh, I was just lying to the person, that's a question for the jury. That's not for the judge to decide that. I think you have to consider whether or not the Second Amendment rights of a person come with a price tag. The Second Amendment allows you to keep and bear arms, to defend your life. Should that come with a price tag of 41 days in jail, the destruction of your life, the destruction of your mental health, the ruination of all that you put together and having to put your life back together after that? I think this court has to say because there was no credible evidence, there was no credibility determination to make, the only credibility determination to make was made by the officer who said, I don't believe the only witness that claims my client did something wrong. You can attach an element that should have been included in the affidavit of probable cause. Absolutely, and the matchers should have known that a neutral eyewitness and a biased eyewitness against my client both exonerated him. Thank you, Your Honors. Thank you, Counselor. Thank you both for your excellent argument. We'll take the matter under revising.